## Carter *v.* Producers' Oil Company, Limited, Appellant.

*Partnership—Limited partnership association—Change of interest.*

Where a person acquires by purchase stock of a limited partnership association organized under the Act of June 2, 1874, P. L. 271, and makes a demand for election to membership, his demand is a consent to membership in regard to his entire holding of shares, and the different dates of acquisition of the shares, and the difference of previous owners are irrelevant. The partnership association has the option to elect to membership or not, and can either accept or refuse the demand, but cannot split it up into fractions, and accept part and refuse part. A refusal of part is a refusal altogether, and at once gives the purchaser of the stock the right to an appraisement and payment for all his shares.

Where a person purchases shares of a limited partnership association, and makes a demand for admission to membership, the association is entitled to a reasonable time to consider its action.

Where a purchaser of shares makes a demand for election to membership, and notifies the association that he will consider a failure to elect within two months as a refusal, the association will not be considered in default for failure to elect within that time where it appears that the next annual election was eight months after the date of the notice, that the company had about 600 members scattered over four states, and that an election could not be made by the managers, but was required to be held at a meeting of the members.

*Partnership—Limited partnership association—Appraisement of value of shares.*

In appraising the value of shares of a limited partnership association, where there have been no sales of shares in the open market, the appraiser may take into consideration the books and accounts showing the amount of money invested, the cost of operating, the earnings and losses, the assets and liabilities, together with such other competent and relevant evidence as affects the book values of the property, or any portion of them. Where the evidence as to the depreciation in the plant and the value of the good-will is meager and unsatisfactory, an appraiser cannot be convicted of error in setting one off against the other.

*Partnership—Limited partners—Appraisement—Interest.*

While as a general rule in appraising the value of shares of a limited partnership association, interest is allowed from the date of the acquisition of the shares, yet if a delay in the appraisement is caused by the purchaser's own act, interest is allowable only from the date which equity under the circumstances requires.

Argued May 24, 1901. Appeal, No. 70, Jan. T., 1901, by defendant, from decree of C. P. Warren Co., June T., 1896,

No. 18½, affirming report of appraiser in case of John J. Carter v. Producers' Oil Company, Limited.  Before McCollum, C. J., Mitchell, Fell, Mestrezat and Potter, JJ.  Affirmed.

Petition for appraisement of shares of a limited partnership association.

The appraiser, Hon. Frank Gunnison, reported, among others, the following facts:

1. I find the Producers' Oil Company, Limited, was organized June 9, 1891, under the provisions of the act of June 2, 1874, P. L. 271, and its supplements, with a capital stock of $600,000, divided into 60,000 shares of the par value of $10.00 each.

2. The plaintiff, who was a member owning 300 shares of stock, having purchased 29,895 additional shares, filed his bill to enforce the right claimed by him, to be recognized as a member, as to the additional shares so purchased by him.  Upon the final hearing, this court entered a decree dismissing the plaintiff's bill, which decree, upon appeal, was affirmed by the Supreme Court, October 11, 1897: Carter v. Producers' Oil Company, Limited, 182 Pa. 551.

3. On November 23, 1897, after the filing of the opinion of the Supreme Court, the plaintiff served a notice upon the defendant association, demanding, inter alia, that he be accorded all the rights of membership, as to all of the shares purchased by him, and in default of compliance with the demand, notifying the defendant association that he was entitled to the value of the interest acquired by him by his purchase, at a price and upon terms to be mutually agreed upon, and in default of such agreement, at a price and upon terms to be fixed by an appraiser to be appointed by this court.

He further requested said defendant association to notify him at its earliest convenience, but not later than January 1, 1898, whether it would comply with his request to be elected to membership, and notified it that, failing to receive a reply by said date, January 1, 1898, he would construe such failure as a refusal, and would proceed accordingly.

4. The defendant association, through its chairman and secretary, replied to the plaintiff's demand and notice, December 29, 1897, quoting a resolution of its board of managers referring to

the resolution of the said board adopted March 9, 1896, which referred the question to the members of the company at their annual meeting to be held June 2, 1896; and to the resolution of the board of managers of March 30, 1897, by which, for the reason recited in the preamble thereto, that the plaintiff, by procuring an injunction, had prevented a meeting of the stockholders of the company, and undertaken to establish his membership, etc., through the aid of the court, which proceeding was then still pending and undetermined, the question of the transfer of said stock was postponed until the final determination of said legal proceedings, and until the plaintiff should request to be elected to membership on said stock; and stated that they would call the attention of the company to the decision of the Supreme Court and determination of said legal proceedings and the plaintiff's request to have said stock transferred to him, and to be elected to membership therein, at the next meeting of the company (the date fixed for the next meeting of the members of the company after the date of this communication, being June 7, 1898).

5. Thereupon on January    , 1898, the plaintiff presented his petition to the court in this case, setting out, 1. The organization of the company.   2. That he had become the owner of the interests purchased by him, and the demand and notice recited above.   3. The proceedings in this court and the Supreme Court.   4. The demand upon and notice to the company, that the company had failed to comply with the demand, and referring to the answer made thereto, and alleged that the same was made by the officers and managers of said defendant company for the purpose of hindering and delaying the plaintiff, and not in good faith in the exercise of their duties.   5. That the transfer of the said interest to the plaintiff had not been followed by election to membership, and the plaintiff was entitled to the value of the interests acquired by him, etc., and praying that an appraiser be appointed by this court, in accordance with the act of assembly, etc.

6. To this petition the defendant answered, alleging that the company had had no meeting since the date of the demand and notice of the plaintiff; and had not refused to elect the plaintiff to membership upon the said acquired interests; that the officers and managers did not deem it their duty to call a special

meeting of said company, which would entail upon the company a large expense, for the sole purpose of passing upon the question of the election of the plaintiff to membership upon said interests; that the company was composed of a great many members, residents of Pennsylvania, New York, Ohio and West Virginia, nearly all actively engaged in business, which they could not conveniently leave, especially at that season of the year, and denying that their answer to the plaintiff's demand and notice was for the purpose of hindering and delaying him, but averred that it was written in the exercise of good faith to all the stockholders of said company; that the company had no opportunity to vote upon the question of membership of said plaintiff upon said acquired interests, he having declined to submit himself to election upon said interests, but choosing rather to go into court to establish his right to vote the same, without being elected to membership therein; that the first regular meeting of the company would be on the first Tuesday of June, 1898, at which time the board of managers would acquaint the stockholders with the determination of the Supreme Court, and present the name of plaintiff for election upon said acquired interests.

. That the board of managers, until action by the company, believed that they had no authority to negotiate with the plaintiff for the purchase of his said interests, but in the event of his not being elected to membership at the next meeting, undertaking to negotiate with plaintiff for the acquisition of said interests at the price and upon the terms as provided by the act of June 25, 1885.

It is further averred that the board of managers did not believe it was impossible for plaintiff to agree with the company or its officers or managers, when the proper time should arrive, as to the value of plaintiff's acquired interests, both as to price and terms, and that, until his name should be submitted to a vote of the company for membership upon said interests, and the company should refuse to elect him a member therein, and the further failure to mutually agree upon the price and terms for the acquisition of said interests, this court had no jurisdiction to appoint an appraiser, as the board of managers was advised and believed.

. 7. Thereafter, on June 11, 1898, this court appointed the

undersigned appraiser to fix the price and terms at and upon which the plaintiff should have the interest owned by him, and upon which he had not been legally elected to membership in said company, and to perform all the other duties of an appraiser appointed by the court under the act of assembly of June 2, 1874, and its supplements.

8. At the regular annual meeting of stockholders of the defendant association held on June 7, 1898, a resolution was adopted, electing the plaintiff a member as to 9,800 shares of the acquired interests, and rejecting him as to the balance. The resolution did not, so far as the evidence discloses, designate any particular shares upon which he was elected to membership. The plaintiff refused to accept such election, and denied the right of the company to elect him to a part of the acquired stock, and reject him as to the remainder.

The appraiser, after an elaborate consideration of the books, accounts, assets and liabilities of the company, appraised the value of the shares held by John J. Carter at $278,922.60, upon which he allowed interest from the date of the filing of his report, which was January 8, 1900. The report was referred back to the appraiser and he thereupon filed a supplemental report in which he appraised the value of the shares at $286,986.68, with interest from October 23, 1900.

Exceptions to the supplemental report were overruled, but the allowance of interest was changed so as to allow it to run from January 1, 1898.

*Error assigned* was the action of the court.

*S. S. Mehard*, with him *Watson & McCleave*, for appellant.— The plaintiff is not entitled to the value of the shares on which defendant elected him to membership : Carter v. Producers' Oil Company, Ltd., 182 Pa. 551.

It was clearly the right of the stockholders to elect the plaintiff upon part of his certificates, and reject him as to the remainder.

The delay complained of was not unreasonable and was not chargeable to defendant company : Morawetz on Corp. (1st ed.) sec. 238, et seq.; Chicago City Ry. Co. v. Allerton, 18 Wallace, 233.

The plaintiff was not injured by the delay complained of.

Interest should not be added to the appraised value of the plaintiff's stock: Kelsey v. Murphy, 30 Pa. 340.

The contract between the parties forbids the allowance of interest: Easton Bank v. Com., 10 Pa. 442; Minard v. Beans, 64 Pa. 411; Brown v. Campbell, 1 S. & R. 178; Hummel v. Brown, 24 Pa. 313; Kelsey v. Murphy, 30 Pa. 341; West Republic Mining Co. v. Jones, 108 Pa. 55; Gyger's Appeal, 62 Pa. 73; Magilton v. Stevenson, 173 Pa. 560; Jones v. Farquhar, 186 Pa. 386; Beatty v. Wray, 19 Pa. 516; Brown's Appeal, 89 Pa. 139.

*J. H. Reed*, of *Knox & Reed*, and *A. Leo Weil*, of *Weil & Thorp*, with them *Hinckley & Rice*, and *Roberts & Carter*, for appellee.—The defendant company had no right to elect plaintiff to membership as to part of the shares acquired by him and refuse election as to the remainder. It must elect as to all or none.

Even if the association defendant had had the right to elect as to part, it had lost such right by its delay. The association having its option should have exercised it promptly, and having failed to do this, within a reasonable time, it thereby lost its right of election: Deverill v. Burnell, L. R. 8 C. P. 480; Layton v. Pearce, 1 Douglas, 15; Moale v. The Mayor of Baltimore, 61 Md. 224; Marlor v. Texas & Pacific R. R. Co., 21 Fed. Repr. 385; Bailey v. Hervey, 135 Mass. 172; Price v. Nixon, 5 Taunton, 338; Small's Est., 151 Pa. 1.

Interest on the amount fixed by the appraiser, as the value of the date of acquisition, should be allowed from the date of acquisition: West Republic Mining Co. v. Jones, 108 Pa. 55; Crawford v. Willing, 4 Dallas, 288; Sims v. Willing, 8 S. & R. 103; Miller v. Bank of New Orleans, 5 Whart. 502; Minard v. Beans, 64 Pa. 411; Gravenstine's Est., 43 Legal Int. 16; Delaware Ins. Co. v. Dealaunie, 3 Bin. 295; Jones v. Farquhar, 186 Pa. 386; Gyger's App., 62 Pa. 73; Brown's App., 89 Pa. 139; Steiger v. Bradley, 34 W. N. C. 123; Del., Lack. & West. R. R. Co. v. Burson, 61 Pa. 369; Phila., etc., R. R. Co. v. Gesner, 20 Pa. 242; Adams v. Fort Plain Bank, 36 N. Y. 255; McCormick v. Penna. Central R. R. Co., 49 N. Y. 303; Mygatt v. Wilcox, 45 N. Y. 306; Dana v. Fiedler, 12 N. Y. 40; McMahon v. N. Y. & E. R. R. Co., 20 N. Y. 463; McCollum v. Seward, 62 N. Y. 316; Sipperly v. Stewart, 50 Barb. 62; Church v. Kidd, 6 Hun, 475.

The motive with which a transferee of stock or interests acquires such stock or interest cannot affect his rights with reference thereto: Rice v. Rockefeller, 134 N. Y. 174; Camden & Atl. R. R. Co. v. Elkins, 37 N. J. Eq. 273; Pender v. Lushington, L. R. 6 Chan. Div. 70; In re Stranton Iron & Steel Co., L. R. 16 Eq. 559; People v. Kip, 4 Cowan, 382 n.; Moffatt v. Farquhar, L. R. 7 Ch. D. 591; Farmers' Loan & Trust Co. v. N. Y., etc., R. R. Co., 150 N. Y. 410.

OPINION BY MR. JUSTICE MITCHELL, October 11, 1901:

The important question in this case is whether the defendant company could elect the plaintiff a member in regard to a part of the shares held by him, and refuse him an election as to the rest. The learned appraiser and the court below were of opinion that the association had such power, but we cannot concur in this view.

A partnership association, commonly but inaccurately called a joint stock company, is the creation of the statutes, and while it is assimilated in some respects to a corporation, it is nevertheless essentially a partnership. But a partnership at common law was liable to dissolution by the death of a partner however small his interest, or by the sale and transfer of his interest either voluntary or under execution. In the companies contemplated by the statute this would be an inconvenience and disadvantage which would defeat the intent to give them some of the attributes of a corporation, and accordingly the fourth section, as was well said by the learned appraiser in In re Disston & Sons File Co., 8 W. N. C. 58, "was framed to avoid the necessity of winding up the concern, and the expense of an equity suit. It provides for an appraisement when the parties cannot agree upon the value of the interest, and contemplates the continuance of the association and the purchase by it of the interest of a partner when there has been a change of ownership." The option to purchase however is with the association, and in this respect the quality of a partnership remains with it. The purchaser cannot force his membership any more than he could at common law. He can only come in here as he could there by consent of the other partners or under the statute of a majority of them. But on the other hand the purchaser at common law had a right to an account and payment, which involved the winding up of

the partnership. The statute averts the latter necessity, and gives what is intended as a simpler and speedier substitute. .

But the principle of partnership that it must be founded on mutual consent is not changed against the purchaser. He could have come into a common-law firm by agreement with the other partners, and the statute is intended to facilitate his doing so in the case of a partnership association. But neither at common law nor under the statute is he under any duty or compulsion to do so. In the present case we have a purchaser who desired to become a member, and made his purchase for that purpose. But the statute classes him with other transferees, personal representatives of decedents, execution creditors, etc. If the plaintiff had acquired his shares by execution against the previous holders for the collection of debt due him by them, it would be a very strained construction to hold that he had thereby invested his money in the enterprise at the option of the majority of the other members, without regard to his own consent. Yet the statute makes no discrimination, but classes all "change of ownership whether by sale, death, bankruptcy or otherwise" under the same provision as to rights both of association and of transferee.

. When the plaintiff made his demand for election he of course indicated his consent to membership. But it was a consent in regard to his entire holding of shares. The different dates of acquisition and the difference of previous owners were irrelevant. His consent was to be taken as of the time and circumstances when it was given. A party may well be willing to risk his money in an enterprise in which he has a controlling voice, and yet unwilling to risk even a part of it where he is only a minority voter. Plaintiff's demand therefore was single. The association could accept or refuse it, but could not split it up into fractions and accept part and refuse part. A refusal of part was a refusal altogether, and at once gave plaintiff the right to an appraisement and payment for all his new shares.

The appraiser and the court below reached this same result but for a different reason. They held that the company had a right to elect as to part only, but had lost it by delay. In this we cannot concur. The company was entitled to a reasonable time to consider its action. After previous matters that will be referred to later in connection with the claim for interest, plain-

tiff made a formal demand for election in November, 1897, and gave notice practically that he would consider a failure to elect by January 1, 1898, as a refusal. It was not in the plaintiff's power to dictate the time, and the time he named was altogether too short. The company had about 600 members, scattered over four states. An election could not be made by the managers but required a meeting of the members. The next regular meeting was not to be held until June, 1898, and the statute does not require more than one meeting a year. No election therefore could be held upon plaintiff's demand, until June, 1898, unless a special meeting were called sooner for this purpose. The company was not obliged to do this. It is true the number of shares involved was very large and the issue important to both parties. But the legal right is the same without regard to the size of the claim, and it would be unreasonable to require a special meeting for every change of ownership among 600 shareholders. With a smaller or more accessible membership the rule would be different, but under all the circumstances we do not think the company in default in this particular.

Both parties have excepted to the appraisement and appealed from the valuation of the shares. In the absence of any sales of shares in the open market, and the peculiar circumstances and motives governing the few private sales that were made, the appraiser reported that the only practical method of valuation was an investigation of the affairs of the company, " the books and accounts, showing the amount of money invested, the cost of operating, the earnings and losses, the assets and liabilities, together with such other competent and relevant evidence as affects the book values of the property, or any portion of it." Two items presented special difficulties, the depreciation in the plants, and the good-will. As to these the appraiser reported that " the testimony is meager and unsatisfactory, and is not based upon a consideration of all the elements which ought to be considered. I have therefore set off the good-will against the depreciation of the plants. This course is not altogether satisfactory, but I have considered it the most equitable and practicable under the circumstances." No better method has been suggested by the parties. The report is a very able, careful and conservative effort to ascertain the true values

after full consideration of all the evidence attainable, and is approved by the court below as being " as satisfactory as the complications and circumstances of the case would permit." We are not convinced that there is any error in it which we can correct.

The only remaining question is that of interest. The court allowed plaintiff interest on the appraised value of his shares from January, 1898. Plaintiff claims interest from the date of his acquisition of the shares, January, 1896, and defendant denies liability for any interest at all.

On the acquisition of his new shares in January, 1896, plaintiff who was previously a member holding a small number of shares demanded recognition to the full extent of his holding, without further election. This being refused, he brought suit in equity, in which, however, he failed. See Carter v. Producers' Oil Co., 182 Pa. 551. This was not finally decided until October, 1897. He then demanded an election, and unless this should be made before January, 1898, an appraisement, as already noted in discussing the subject of defendant's delay. We concur with the court below that there was no duty on the defendant to hold the election until the final decision of that suit. But we go further and as already discussed hold that the company was not in fault in postponing the election until its regular meeting in June, 1898. Nor does there seem to have been any unreasonable loss of time in the appraisement though it occupied more than two years. The evidence was voluminous and conflicting and the questions difficult. The defendant therefore was not chargeable with interest by reason of delay previous to the approval of the appraiser's final report.

But nevertheless interest should be allowed on general principles. The statute provides that the purchaser shall be entitled to the value of the shares " at the date of acquiring," and prima facie that means that payment if deferred shall be made as nearly as possible equivalent to payment at the date. The legal equivalent for deferred payment is interest. In the settlement of partnership accounts, on death or retirement of a partner, to which this proceeding is somewhat analogous, interest is allowed or refused according to the circumstances (Gyger's Appeal, 62 Pa. 73), and one of the important circumstances is that the firm has had the use of the money. That

is the case here. As already noted, however, the court below properly held that the delay at first was caused by plaintiff's own action and defendant is not chargeable for that time. The court, therefore, was right in allowing interest only from the date which equity under the circumstances required.

Decree affirmed.